## DIMITRIUS KIOUKIS *v.* NORMA KIOUKIS

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued June 3—decision released August 11, 1981

*Paul P. DeLuca,* for the appellant (defendant).

*Sheldon A. Rosenbaum,* for the appellee (plaintiff).

BOGDANSKI, C. J. On December 2, 1976, the trial court rendered a judgment dissolving the marriage of the parties and granting custody of their minor child, Lisa Kioukis, to the defendant mother with reasonable rights of visitation to the plaintiff father, and ordering the plaintiff to pay thirty-five dollars per week for the support of the minor child. In January of 1977, when Lisa was five years old, the defendant mother and the child moved to Tennessee. The plaintiff continued to reside in Connecticut. The family relations officer has been collecting the support payments.

On January 31, 1980, the plaintiff moved to modify the order concerning visitation. That motion was heard on April 7 and April 22, 1980. No evidence was taken on either of those two days. Neither the defendant nor the minor child was within Connecticut. The transcript indicates that the parties also filed motions to modify support. These motions should have been made a part of the printed record or the briefs. Practice Book § 3060F (c) (3). Nevertheless, we will review the defendant's claim of error regarding the support modification.

On April 7, 1980, the trial court, *Sullivan, J.,* modified the plaintiff's visitation rights and ordered, as part of the modification, that prior accrued support payments amounting to $1015 and all later support payments be held by the family relations office and not released to the defendant until she complied with the modified visitation.

From those orders the defendant mother has appealed challenging the jurisdiction of the court to modify visitation and to order the withholding of child support payments.[1]

The defendant contends that the Uniform Child Custody Jurisdiction Act (UCCJA), General Statutes §§ 46b-90 through 46b-114, deprived the court of jurisdiction to modify the visitation order.[2]

The Superior Court's jurisdiction to modify an order regarding visitation of a minor child is conferred and limited by statute. General Statutes § 46b-56 (a) provides, in pertinent part: "In any

---

[1] On May 30, the defendant moved to dismiss the plaintiff's May 19 motions for modification of custody and for contempt. The defendant has appealed from the denial of her motion to dismiss. The defendant may not appeal from the denial of her motion to dismiss. A denial of a motion to dismiss is not a final judgment. "This court has developed a number of standards delineating the requirement of finality. One test is whether the order or action terminates a separate and distinct proceeding. . . . Another test lies in the effect of an order 'as concluding the rights of some or all of the parties.'" E. J. Hansen Elevator, Inc. v. Stoll, 167 Conn. 623, 627, 356 A.2d 893 (1975). Although this issue was not raised by the parties, this court will upon its own motion reject any appeal which is not appealable under Practice Book § 3000. Hoberman v. Lake of Isles, Inc., 138 Conn. 573, 574, 87 A.2d 137 (1952). Accordingly, we restrict our review to the April, 1980 orders modifying visitation and child support.

[2] The defendant, at the April, 1980 hearings, did not contend that the court lacked jurisdiction. As a general rule: "If a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim." Practice Book § 285A. Since the question involved is the subject-matter jurisdiction of the trial court, we review this issue. "As we have repeatedly held, the question of subject-matter jurisdiction can be raised at any time . . . and the lack thereof cannot be waived." LaBow v. LaBow, 171 Conn. 433, 440, 370 A.2d 990 (1976).

controversy before the superior court as to the custody or care of minor childen, and at any time after the return day of any complaint under § 46b-45, the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation if it has jurisdiction under the provisions of chapter 815o."

As its stated purposes the UCCJA seeks to: "(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being; (2) promote cooperation with the courts of other states to the end that a custody decree is rendered in a state which can best decide the case in the interest of the child; (3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state; (4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child; (5) deter abductions and other unilateral removals of children undertaken to obtain custody awards; (6) avoid relitigation of custody decisions of other states in this state insofar as feasible; (7) facilitate the enforcement of custody decrees of other states; (8) promote and expand the exchange of information and

other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and (9) make uniform the laws of the states which enact The Uniform Child Custody Jurisdiction Act." General Statutes § 46b-91 (a) (1); see *Agnello* v. *Becker,* 184 Conn. 421, 426, 440 A.2d 172 (1981).

"The basic scheme of the Act is simple. First, one court in the country assumes full responsibility for custody of a particular child. Second, for this purpose a court is selected which has access to as much relevant information about the child and family in the state as possible. Third, other essential evidence, which is inevitably out-of-state in the case of an interstate child, is channelled into the first court which might be called the 'custody court.' Fourth, other states abide by the decision of the custody court and enforce it in their territory, if necessary. Fifth, adjustments in visitation and other ancillary provisions of the decree, and custody changes, if any, are as a rule made by the original custody court. Sixth, if the child and his family no longer have appreciable ties with the state of the original court, a new custody court is selected to take the place of the original one for purposes of adjustments and modifications, and pertinent information is channelled from the prior to the subsequent custody court." Bodenheimer, "The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws," 22 Vand. L. Rev. 1207, 1218 (1969).

A "custody determination" under the UCCJA includes court orders involving visitation rights, but does not include decisions related to child sup-

port. General Statutes § 46b-92 (2).[3] An "initial decree" is "the first custody decree concerning a particular child, including a temporary order of custody granted pendente lite." General Statutes § 46b-92 (6). A "modification decree" is "a custody decree which modifies or replaces a prior decree, whether made by the court which rendered the prior decree or by another court." General Statutes § 46b-92 (7).

The April, 1980 orders come under the definition of "modification decree." Modification jurisdiction under the UCCJA is determined by §§ 46b-93 and 46b-104. Section 46b-104 (a) relates to modification of out-of-state decrees. It expresses a preference that jurisdiction to modify an existing decree is reserved for the state that rendered the initial decree. It states: "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction." As stated in the commissioners' note to § 14 of the UCCJA (here, General Statutes § 46b-104): "In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state

---

[3] " 'Custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights; it does not include a decision relating to child support or any other monetary obligation of any person or any matter properly within the jurisdiction of any court of probate." General Statutes § 46b-92 (2).

has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3 [here, General Statutes § 46b-93]. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. . . . For example, if custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6½ months (3½ months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the 'home state' of the child. If, however, the father also moved away from state 1, that state loses modification jurisdiction interstate, whether or not its jurisdiction continues under local law. . . . Also, if the father in the same case continued to live in state 1, but let his wife keep the children for several years without asserting his custody rights and without visits of the children in state 1, modification jurisdiction of state 1 would cease. . . . The situation would be different if the children had been abducted and their whereabouts could not be discovered by the legal custodian for several years. The abductor would be denied access to the court of another state under section 8 (b) [here, General Statutes § 46b-98] and state 1 would have modification jurisdiction in any event under section 3 (a) (4). . . . If the state of the prior decree declines to assume jurisdiction to modify the decree, another

state with jurisdiction under section 3 can proceed with the case. That is not so if the prior court dismissed the petition on its merits." Uniform Child Custody Jurisdiction Act § 14, 9 U.L.A. 154-55 (1979).

The preference for continuing jurisdiction of the original state seeks to prevent parental resort to kidnapping to gain a more favorable judgment in a new forum. See Bodenheimer, "Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA," 14 Family L.Q. 203 (1981); Clark, Law of Domestic Relations (1968) 319-23.

The first state's exclusive jurisdiction, however, does not continue indefinitely. At some point the child's connections with the first state become too tenuous to satisfy the demands of § 46b-93.[4] In the present case, Connecticut does not have jurisdiction

---

[4] "[General Statutes] Sec. 46b-93. JURISDICTION. (a) The superior court shall have jurisdiction to make a child custody determination by initial or modification decree if: (1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody of for other reasons, and a parent or person acting as parent continues to live in this state; or (2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or (3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or (4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (2) or (3) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the

under § 46b-93 (a) (1). Connecticut was not the home state[5] of the child at the commencement of the modification proceeding. "The proceeding" refers to the modification action, and not to the original complaint seeking a dissolution of the marriage of the parties, which was in 1976. To hold that "the proceeding" refers to the original dissolution action would confer perpetual jurisdiction over matters of custody to the courts of the state which granted the dissolution, regardless of whether the parties or child had any further connection with that state. *Pierce* v. *Pierce,* 287 N.W.2d 879 (Iowa 1980).

Connecticut may have jurisdiction under § 46b-93 (a) (2). This subsection involves a statutory "best interest of the child" test which cannot initially be determined by this court on appeal. We therefore remand to the trial court for a consideration of its jurisdiction under § 46b-93.

In considering § 46b-93 (a) (2) the trial court should be guided by the purposes of the UCCJA. As stated in the commissioners' note to UCCJA § 3, "[p]aragraph (2) perhaps more than any other pro-

---

best interest of the child that this court assume jurisdiction.

  (b) Except under subdivisions (3) and (4) of subsection (a) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

  (c) Physical presence of the child is not a prerequisite for jurisdiction to determine his custody."

  [5] "[General Statutes] Sec. 46b-92. DEFINITION. . . . (5) 'Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the state in which the child lived from birth with any of such persons. Periods of temporary absence of any of the named persons are counted as part of the six month or other period."

vision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction." Uniform Child Custody Jurisdiction Act § 3, 9 U.L.A. 124 (1979).

On remand, if the trial court determines that it has jurisdiction under any provision of § 46b-93, it must then consider the effect of § 46b-97. Section 46b-97 declares, in part: "(a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." See *Moore* v. *Moore,* 546 P.2d 1104 (Or. App. 1976). Section 46b-97 (d) stresses interstate judicial communication and cooperation and provides: "Before determining whether to

decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties." Such communication can be made by the trial court, if it desires, on remand.

As already noted, the trial court also ordered that while child support payments to the defendant were to continue at the same amount per week, past accrued and collected support paid by the plaintiff to the family relations officer and all future accruing support payments be held and not released to the defendant until the defendant complied with the then modified visitation. We have repeatedly held that "[i]t has never been our law that support payments were conditioned on the ability to exercise rights of visitation or vice versa. The duty to support is wholly independent of the right of visitation." *Raymond* v. *Raymond,* 165 Conn. 735, 742, 345 A.2d 48 (1974). The plaintiff did not make any showing that the defendant's move to Tennessee made it financially burdensome for him to exercise his right of visitation. There has not been a change in circumstances sufficiently substantial to require a change in the support orders. *Bozzi* v. *Bozzi,* 177 Conn. 232, 413 A.2d 834 (1979). Although the support payments here were not reduced in amount but were merely suspended pending the defendant's compliance with the visitation order, the rationale of *Raymond* and *Bozzi* controls.

There is error, the judgment is set aside and the case remanded with direction to enter judgment for

the defendant on the issue of child support; remanded for further proceedings on the issue of visitation.

In this opinion the other judges concurred.