[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On May 7, 1992 a hearing was held regarding the custody of the minor child, Natalie Alexis Schweighoffer. A motion to dismiss due to lack of jurisdiction under the UCCJA was made by the defendant.
FACTS
On June 30, 1990 the parties were married while they were both in the armed services. The minor child, Natalie, was born on November 7, 1990. The child has moved seven times since her birth: (1) from November 7, 1990 until December 25, 1990 the child lived in Norfolk, Virginia; (2) from December 26, 1990 until February 1991 the child lived in Madison, Florida; (3) from February 1991 to March 1991 the child lived in Norfolk, Virginia; (4) from March 1991 to April 1991 the child lived in Rocky Hill, Connecticut; (5) from April 1991 to May 1991 the child lived in Norfolk, Virginia; (6) from May 1991 to July 1991 the child lived in Madison, Florida; (7) from July 1991 until February 26, 1992 the child lived in Rocky Hill, Connecticut; (8) from February 27, 1992 to the current time the child has lived in Madison, Florida.
When the defendant took the child to Florida in February 1992, the plaintiff was told by the defendant that the trip would be for approximately two weeks and the plaintiff consented to this temporary stay by the child in Florida. The defendant then contacted plaintiff and informed him she was not returning to Connecticut and was filing for divorce. On March 27, 1992 defendant filed for divorce and custody in Florida. After being served in the beginning of April, plaintiff filed for custody on April 14, 1992 in Connecticut. Defendant was served on April 21, 1992. Defendant did not inform the court of the Connecticut action and on May 1, 1992 the Florida court granted a divorce and awarded custody to the defendant.[1]
At the hearing, the testimony given by the plaintiff father, indicated the child had resided in Connecticut for seven months prior to the defendant mother taking the child to Florida. The plaintiff claims the defendant misrepresented her intent to return to Connecticut in approximately two weeks. The CT Page 7322 defendant also failed to notify the court in Florida of the pending custody action in Connecticut.
JURISDICTION
Under 46b-93 (a) this court shall have jurisdiction if:
(1) This State (A) is the home State of the child at the time of commencement of the proceedings or (B) had been the child's home State within six months before the commencement of the proceedings and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as a parent continues to live in the State; or
(2) It is in the best interest of the child that a court of this State assumes jurisdiction because (A) the child and his parents or the child and at least one contestant have a significant connection with this State and (B) there is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships.
"HOME STATE" TEST
According to the plaintiff, the child lived in Connecticut for seven months before she was taken to Florida. This would meet the time requirement of the statute.
Looking at the understanding between the parents concerning the duration of the physical presence in a state serves the purpose of discouraging abduction of children in order to obtain more favorable jurisdiction in a custody hearing. The goal of the UCCJA is to "Deter abductions and other unilateral removals of children undertaken to obtain custody awards." Mondy v. Mondy, 428 So.2d 235, 237 (Fla. 1983). In this case the child was taken unilaterally to Florida by the mother after the child had been residing in Connecticut for seven months. This is exactly the type of situation the UCCJA was enacted to discourage. The child meets the home state criteria Connecticut has jurisdiction under this provision.
"SIGNIFICANT CONNECTIONS" TEST
Under CGS 46b-93 (a)(2) Connecticut has jurisdiction if the child and at least one party have significant connections with the State. The statute requires the court to analyze whether "there is available in this state substantial evidence concerning the child's present and future care, protection, training and personal relationships" to determine whether CT Page 7323 Connecticut is the more appropriate forum. "The `significant connections' test allows a state with the most evidence of the child's circumstances to assume jurisdiction." Kaye v. Kaye, 7 Connecticut Superior Court Reports 512 (May 4, 1992).
Both the father and child have significant connections with the state. Substantial evidence concerning the child's present or future care, protection, training and personal relationships is readily available in Connecticut. Besides her father, Natalie has a grandfather, grandmother, a great-grandmother, and a great-aunt living in Connecticut. She occasionally attended a day care operated by her great aunt which allowed her to interact with other children. She had a pediatrician in Connecticut. This court finds that the child has significant connections with Connecticut and, therefore, jurisdiction under this provision.
"INCONVENIENT FORUM" TEST
Once it is determined that Connecticut has jurisdiction, the court can decline to exercise jurisdiction if the state is found to be an inconvenient forum. Under CGS 46b-97, where another state has exercised jurisdiction, ". . . the Connecticut court must analyze whether Connecticut has a closer connection with the child and one parent, and whether substantial evidence is more readily available regarding the child's present and future care, protection, training and personal relationships, to determine whether Connecticut is the more appropriate forum in which the matter should be addressed." Kioukis v. Kioukis,185 Conn. 249, 258 A.2d (1981). At this time it is clear that regardless of whether the case was in Connecticut or Florida, the homes in each state would be investigated. Therefore, Connecticut is not an inconvenient forum.
REPREHENSIBLE CONDUCT
Under UCCJA, if the petitioner for an initial decree has wrongfully taken the child from another state or engaged in similar reprehensible behavior the court may decline to exercise jurisdiction. C.G.S. 46b-98 (a). According to the testimony presented, the child had lived in Connecticut for seven months prior to being taken to Florida. The UCCJA custody affidavit filed by the defendant does not reflect this. Because of the error in the affidavit, the Florida court assumed that no other state had subject matter jurisdiction over the child.
The second issue raised was that after the commencement of the Florida action, the defendant failed to notify the Florida court of the pending proceeding. The defendant had a continuing duty to inform the court of any custody proceeding concerning CT Page 7324 the child in any other state. The defendant did not inform the Florida court when she was served. This court finds the defendant's actions to be in violation of the UCCJA. Therefore Florida should decline jurisdiction and Connecticut should accept jurisdiction.
CONCURRENT JURISDICTION
Since Florida could find it has concurrent jurisdiction with Connecticut, this court would then have to determine which court should assume the burden of determining custody. "When the courts of more than one state have jurisdiction, priority in time of filing ordinarily controls which state shall proceed with the action so long as the court having such priority is exercising jurisdiction substantially in conformity with this act." Hickey v. Baxter, 461 So.2d 1364 1369 (1984).
According to the testimony, Florida did not exercise jurisdiction substantially in conformity with the UCCJA. The child had not lived in Florida for the requisite six months in order to make Florida the home state. The Florida court should have made inquiries as to whether Connecticut was also claiming jurisdiction or whether Florida was an inconvenient forum for this matter.[2] Because the UCCJA was adopted in order to deter parental kidnapping and forum shopping by parents, the court finds Connecticut should assume the burden of determining custody. To do otherwise would run counter to the goals of the UCCJA. It would also reward a mother for abducting her child and playing fast and loose with the court system.
CONCLUSION
The court finds that Connecticut has jurisdiction under 46b-93. The court also finds Connecticut not to be an inconvenient forum for this action. The court also finds that although Florida may have concurrent jurisdiction, Connecticut should assume the burden of determining custody. Upon the filing of the proper motion, this court will consider the issue of custody.
NORKO, J.