[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on October 27, 1989, in Brookfield, Connecticut, and thereafter resided at 154 North Lakeshore Drive, in said municipality, with their son, Jonathan, who was born on August 18, 1990. On January 11, 1991, the plaintiff filed a complaint seeking a dissolution of the marriage and joint legal custody of Jonathan. On April 4, 1991, after the defendant filed a cross complaint seeking dissolution of the marriage, sole legal and physical custody of Jonathan, and child support, the plaintiff withdrew his complaint. While the dissolution proceeding was pending, the defendant moved with Jonathan to Vermont to CT Page 11500 reside with her parents.
On October 9, 1991, the court dissolved the marriage and, pursuant to a separation agreement which was incorporated by reference into the dissolution decree, ordered that the defendant have sole legal and physical custody of Jonathan, and that the plaintiff have reasonable, liberal and flexible rights of visitation. The court also entered a support order in the amount of $42,000 per year, payable in monthly installments of $3,500, until February of 1993, at which time the payments were to be reduced to $30,000, payable in monthly installments of $2,500, until such time as Jonathan reached the age of majority or otherwise became emancipated.
On June 29, 1992, the plaintiff filed a motion for modification of child support asserting that there were substantial changes in the circumstances of the parties as (a) the defendant relocated to Vermont; (b) the defendant remarried and resides in the home of her husband and his two sons; and (c) the parties' minor child no longer needs the same level of financial support as previously ordered. The motion also requested fixed visitation because of the claimed refusal of the defendant to permit him to exercise his rights of such visitation. This motion in turn was followed on July 13 by a motion for contempt alleging the failure of his former wife to comply with court orders, specifically the visitation orders.
The defendant has moved to dismiss the action for contempt and modification of child support and visitation claiming that: the court lacks jurisdiction over the subject matter pursuant to Sec. 46b-93 of the General Statutes in that: (a) Connecticut was not the home state of the child at the time of the filing of the plaintiff's motion; (b) it is not in the best interest of the child that a court of this state continue jurisdiction because the connection between the child and this state is not as significant as the child's connection with the child's home state, and more substantial evidence concerning the child's present or future care, protection, training and personal relationship is available in the child's home state; (c) it is clear that the State of Vermont has home state jurisdiction pursuant to Sec. 49b-93; it has not declined jurisdiction and there is nothing to suggest that it would decline. In addition, Connecticut is CT Page 11501 an improper venue and/or inconvenient forum, pursuant to Sec. 49b-97 in that: (a) Vermont is the child's home state as defined by Sec. 49b-92(5); (b) Vermont has a closer connection with the child and his family; (c) substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in Vermont; and (d) the exercise of jurisdiction by a court of this state would contravene some of the purposes stated in Connecticut General Statutes, Sec. 46b-91.
The court's ability to modify visitation is governed by Sec. 46b-56 of the General Statutes which provides that:
 (a) In any controversy before the superior court as to the custody or care of minor children, and at any time after the return day of any complaint under section 46b-45, the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation if it has jurisdiction under the provisions of Chapter 815o.
(Emphasis supplied.) Chapter 815o is the Uniform Child Custody Jurisdiction Act (UCCJA), and is contained in Sec.46b-90 et seq. of the General Statutes. The UCCJA creates a two tier approach to the issue of jurisdiction. Campbell v. Campbell, 388 N.E.2d 607, 608. The first is contained in Sec. 46b-93, which establishes the general class of custody cases that will be within the trial court's jurisdiction. The second tier is embodied in Sec. 46b-97, which is intended to vest only one state with jurisdiction at any given time. In order to bring about a measure of interstate stability in custody awards, the UCCJA limits custody jurisdiction to the state where the child has his home or where there are other strong contacts with the child and his family. Grynkewich v. McGinley, 3 Conn. App. 541, 545-46.
Modification jurisdiction under the UCCJA is determined by Secs. 46b-93 and 46b-104 respectively. Adjustments in visitation and other ancillary provisions of the decree, and custody changes if any are as a rule made by the original custody court. However, the first state's jurisdiction does not continue indefinitely. At some point the child's connections with the first state become too tenuous to CT Page 11502 satisfy the demands of Sec. 46b-93. (Emphasis added.) Kioukis v. Kioukis, 185 Conn. 249, 253-57. Section 46b-93(a) provides that the superior court shall have jurisdiction to make a child custody determination by initial or modification decree if (1) this state (a) is the home state of the child at the time of commencement of the proceeding, or (b) had been the child's home state within six months before the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody of for other reasons, and a parent continues to live in this state; or (2) it is in the best interests of the child that a court of this state assume jurisdiction because (a) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (b) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or (3) the child is physically present in this state and (a) the child has been abandoned or (b) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or (4)(a) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (2) and (3) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (b) it is in the best interest of the child that this court assume jurisdiction. It tortures neither law nor logic to recognize that this court will not have jurisdiction if the child's connections with Connecticut become too tenuous to satisfy the terms of Sec. 46b-93.
Applying the facts of the present case to that statute, the court finds that Connecticut is no longer Jonathan's home state as required by Sec. 46b-93(a)(1) because Jonathan has resided in Vermont for at least six months prior to the commencement of the modification proceeding and the facts and pleadings do not support jurisdiction under subsections (3) and (4) of that subsection. Therefore, for the court to have and exercise jurisdiction, the court must be convinced that jurisdiction is in the best interest of the child since the child and the parent have significant connections with Connecticut and there is available substantial evidence concerning the child's present or future care, protection, CT Page 11503 training and personal relationships under the statute.
"Judicial decisions interpreting the Uniform Act have not sharply delineated what quantum of facts constitute `a significant connection' and `substantial evidence.' Courts generally give the decree-rendering state a strong presumption of continuing modification jurisdiction until all or almost all connection with the parents and the child is lost." (Citations omitted.) It has been said that normally, only when the child and both parents have left the decree-rendering state is deference to the jurisdiction of the original court no longer appropriate. Harris v. Melnick,314 Md. 439, 552 A.2d 38-45. In addition, when determining whether the court has jurisdiction under subsection (a)(2), the court "should be guided by the purposes of the UCCJA." Kioukis v. Kioukis, supra, 257.
 `But . . . [subsection (a)(2)'s] purpose is to limit jurisdiction rather than proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction.'
(Emphasis added.) (Citation omitted.) Kioukis v. Kioukis, supra. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. Id. Consistent with the foregoing, the court must therefore examine Jonathan's contacts with Connecticut.
Connecticut was the forum that dissolved the marriage that ordered reasonable, liberal and flexible visitation, and that ordered child support. Connecticut was the forum where CT Page 11504 Jonathan was born and where he lived for approximately one year, almost one-half of his short life. It is the forum where the plaintiff resides with his new wife and her children. Conversely, the defendant stresses that Jonathan no longer resides in Connecticut and is residing in Vermont, where he has resided with her and she, as mentioned previously, has since remarried approximately a year ago. In addition, Jonathan's maternal grandparents currently reside in Vermont. Nevertheless, despite these contacts with Vermont, the test under section 46b-93(a)(2) is not which state has the most contact, but whether the plaintiff and Jonathan have significant connections with Connecticut and whether Connecticut has substantial evidence concerning Jonathan's present or future care, protection, training and personal relationships. To reiterate, the plaintiff and Jonathan have substantial connections with Connecticut, a state where Jonathan lived for approximately one-half of his short life, and a state where the plaintiff resides with his new wife and her children. In addition, as a result of these connections with Connecticut, the court is satisfied that Connecticut possesses substantial evidence concerning Jonathan's present or future care, protection, training and personal relationships, as required by the statute. Therefore, the court finds that Connecticut has subject matter jurisdiction over the plaintiff's motion to fix visitation, and the plaintiff's motion for contempt.
However, even if the trial court determines that it has jurisdiction under any provision of Sec. 46b-93, it must then consider the effect of Sec. 46b-97. Kioukis v. Kioukis, supra, 258. Section 46b-97 provides that "[a] court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." (Emphasis added.)
"The purpose of the inconvenient forum provision thus `is to encourage judicial restraint in exercising jurisdiction whenever another state appears to be in a better position to determine custody of a child.'" (Citation omitted.) Declining jurisdiction under Sec. 46b-97 is discretionary with the court. Although Vermont has become Jonathan's home state, the home state factor was never CT Page 11505 intended to tip the balance of factors towards a new forum. Brown v. Brown, 195 Conn. 98, 109.
 It is clear that Sec. 46b-97 contemplates a court having jurisdiction. The attack on this case is a motion to dismiss. This is not reason to dismiss the case, but rather for a court to decline to exercise jurisdiction. A careful reading of the statute indicates that the court may at any time find it to be an inconvenient forum. This court would keep an open mind as the case progressed as to whether or not the provisions of Sec. 46b-97 should be invoked. No matter how the investigation is conducted it is clear that some of the investigation would take place in [Vermont] and some in Connecticut regardless of whether the case were in Connecticut or [Vermont].
(Emphasis added.) Kaye v. Kaye, 7 CSCR 511, 512 (April 8, 1992, Karazin, J.). Connecticut, at this point, is not an inconvenient forum as defined by Sec. 46b-97.
Finally, Secs. 46b-61, 46b-56 and 46b-93, when read together, grant the court subject matter jurisdiction over child support issues when the court is also hearing the custody issue. Howe v. Howe, 6 CSCR 518 (May 3, 1991, Steinberg, J.). Therefore, since the court has subject matter jurisdiction to decide the motion to fix visitation, it also has subject matter jurisdiction to decide the motion to modify child support.
The motion to dismiss is, accordingly, denied.
Moraghan, J.